# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 20-163 |
| | ) | |
| MITCHELL JOHNSON | ) | |

## Opinion and Order on Motion to Suppress

Defendant Mitchell Johnson is charged in a one-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF No. 6. Presently before the Court is Mr. Johnson's Motion to Suppress Evidence (ECF No. 26) to which the government has field a response (ECF No. 33). A video hearing on the motion was held on June 8, 2021. ECF No. 44. At the hearing, testimony was presented from Detective Lee Bartolicius of the Duquesne Police Department and Detective Joshua Stegena of the Allegheny County Police Violent Crimes and Firearms Unit. For the reasons that follow, Defendant's motion will be denied.

I.  **Background**

Detective Lee Bartolicious is a Detective with the Duquesne Police investigating narcotics and major crimes. On January 21, 2020, a Duquesne Police patrol officer called Detective Bartolicious and his partner to assist with a report of an armed robbery. The two victims of the robbery reported that they had entered into an online transaction to sell high-end merchandise and traveled to a certain residence to complete the sale. Upon arrival at the residence, the victims were told to go to 1022 Lincoln Avenue, a residence located a few houses away, to complete the sale. At the 1022 Lincoln Avenue residence the victims were told that they had to wait for another individual to arrive before the sale could take place. After waiting at

the residence to complete the sale for a period of time, the victims were robbed of the merchandise at gunpoint, forced to transfer cash to one of the robbers via a mobile application, and had their driver's licenses photographed. The victims were warned that, if either of them went to the police, their houses would be burned down.

After being called-in to work to assist with the report of the robbery, Detective Bartolicious requested additional assistance from the Allegheny County Police Violent Crimes and Firearms Unit (VCF). When he arrived at Duquesne Police station, Detective Bartolicious directed a Duquesne Police patrol sergeant to set up surveillance at 1022 Lincoln Avenue. Members of the VCF Unit assisted with the surveillance. Detective Stegna, a Detective with Allegheny County Police VCF Unit, was one of the officers involved in the investigation and surveillance. Detective Bartolicious directed the surveilling officers to stop any person leaving the residence while he sought to obtain a search warrant. Pursuant to the surveillance plan, Detective Stegna and his partner were stationed as the "take-down" vehicle at a location that was away from the residence in the event a vehicle traffic stop became necessary. Other VCF Unit officers were stationed in close proximity to the residence in order to maintain surveillance on the residence. With respect to the application for a search warrant, Detective Bartolicious intended to seek approval to search the residence for the items allegedly taken from the victims, for cell phones that may contain evidence of the victim's driver's license and/or the alleged forced mobile cash transfer, and for the firearms used in the robbery.

The residence, 1022 Lincoln Avenue, was known to the Duquesne Police department as the residence of the leader of a criminal organization known as the "Duff Gang" or "A Block." Detective Bartolicious was familiar with the Duff Gang's leader and other members of the organization. In the past, pursuant to search warrants executed at 1022 Lincoln Avenue,

2

Duquesne Police have recovered narcotics and firearms. The victims described several persons, who were inside the residence when the robbery occurred, and the victims provided the "street names" of some of those persons. By reviewing online social media and using the information provided by the victims, Detective Bartolicious was able to identify the full names of five individuals who were present during the robbery, not all of whom were involved in the robbery. Four of the individuals were known to be members of the criminal organization associated with the residence. The fifth individual, who was <u>not</u> known as a member of the criminal organization or as having a relationship with the residence, was identified as Mr. Johnson. While continuing to prepare an application for a search warrant, Detective Bartolicious relayed to the surveillance officers the information he learned about the individuals who were reportedly present during the robbery.

At approximately 10:00 PM, a vehicle pulled up to the residence. A short time later an individual, later identified as Mr. Johnson, exited the residence and entered the vehicle. The vehicle pulled away from the residence while law enforcement maintained surveillance on the vehicle as it traveled. Eventually, Detective Stegna and a Duquesne Police officer in a marked police car were able to effectuate a traffic stop on the vehicle. The officers exited their vehicle and identified themselves. They observed Mr. Johnson engage in furtive movements consistent with concealment of contraband. Although the officers ordered Mr. Johnson to show his hands, he did not comply; instead, he continued to engage in suspicious movements. He then exited the vehicle and fled. While in pursuit, the officers observed Mr. Johnson reach into his waistband. Mr. Johnson continued to disobey the officers' orders to stop and to show his hands. Eventually, Detective Stegna deployed his Taser and apprehended Mr. Johnson. During his pursuit of Mr.

3

Johnson, Detective Stegna observed a black object from Mr. Johnson's right-hand fly through the air. A search of the same area uncovered a loaded firearm.

**II.    Discussion**

Mr. Johnson argues that law enforcement lacked reasonable suspicion to stop him when he exited the house. He argues that the time delay between the alleged robbery (approximately four hours) and the generic description of the individual provided by the victims (medium build, medium-skinned black man) is insufficient to support reasonable suspicion to stop Mr. Johnson. For the same reasons, he argues that law enforcement lacked reasonable suspicion to conduct the traffic stop. For the reasons staed below, each of Mr. Johnson's arguments lack merit.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. In Terry v. Ohio, the Supreme Court held that a brief investigatory warrantless search, based on less than probable cause, is permissible under the Fourth Amendment where a police officer has a reasonable, articulable suspicion that criminal activity is afoot. Terry, 392 U.S. 1, 30 (1968), see also United States v. Yamba, 506 F.3d 251, 255 (3d Cir. 2007). The Supreme Court has "described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (quoting United States v. Cortez, 449 U. S. 411, 417-418 (1981)). Reasonable suspicion is more than a hunch but less than probable cause. United States v. Green, 897 F.3d 173, 183 (3d Cir. 2018). In evaluating the reasonableness of a Terry stop, the Court will look at the totality of the circumstances. U.S. v. Valentine, 232 F.3d 350, 353 (citing U.S. v. Sokolow, 490 U.S. 1, 8 (1989) (citations omitted). "The Supreme Court has stressed that the

totality of the circumstances standard enables 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" United States v. Thompson, 772 F.3d 752, 759 (3d Cir. 2014) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). In considering a specific set of circumstances, "due weight must be given . . . to the specific reasonable inferences which [a police officer] is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27.

Based on the facts and circumstances known to Detective Bartolicious, which he conveyed to the surveilling officers, there was probable cause, and at a minimum, reasonable suspicion, to believe that evidence of the armed robbery would be found inside 1022 Lexington Avenue. Ornelas, 517 U.S. at 696 (probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found") (citing Brinegar v. United States, 338 U. S. 160, 175-76 (1949) and Illinois v. Gates, 462 U. S. 213, 238 (1983)). A robbery occurring inside the residence at 1022 Lincoln Avenue was reported to police by the victims. When interviewed, the victims stated that they were robbed of merchandise at gunpoint. They told police that they were forced to transfer money to the robbers via a mobile application and photographs of their driver's licenses were taken. The victims also reported that the robbers warned them their houses would be burned down if they reported the events to law enforcement. Based on information provided by the victims; law enforcement learned the names of five individuals that were in the house during the robbery, four of whom were known to be associated with the criminal organization. Significantly, law enforcement was familiar with the residence at 1022 Lexington Avenue as a known location of the leader of a criminal organization and had

previously executed search warrants at the location, which uncovered narcotics and firearms. Law enforcement is "'not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.'" United States v. Nelson, 284 F.3d 472, 477 (3d Cir. 2002) (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). The known facts under the existing circumstances are sufficient to support a belief by law enforcement that evidence of the robbery and contraband (such as the firearms used in the robbery) would be found inside the residence.

Surveillance was established at the residence with instructions that anyone exiting the house should be stopped, either as a suspected robber or as a witness to the alleged robbery. The operational decision to stop any individual exiting the residence was justified, as anyone exiting the residence was potentially a suspect or a witness to the alleged robbery. The fact that the residence was a known location of a criminal organization, and that the alleged robbers used firearms, heightened the need for law enforcement to be vigilant as to persons exiting the residence. A stop of Mr. Johnson as he exited the residence would have been proper. However, such stop would have risked alerting the inhabits of the presence of law enforcement, thereby further risking the destruction of evidence and the flight of potential suspects and witnesses. Mr. Johnson exited the residence, entered a vehicle, and drove away. He was then stopped in accord with the plan. The decision not to stop Mr. Johnson as he exited the residence was prudent and reasonable under the circumstances as to do so would potentially jeopardize the safety of officers and the public. Detective Bartolicious was also in the process of obtaining a search warrant for the residence. Considering the totality of the circumstances, the Court finds that Law enforcement was justified in conducting the traffic stop and arresting Mr. Johnson.

### III.     Conclusion

For the reasons stated above, Mr. Johnson's Motion to Suppress Evidence (ECF No. 26) is denied.


IT IS SO ORDERED.


Dated: <u>July 6, 2021</u>                                                            _____
                                                                                                Marilyn J. Horan
                                                                                                United States District Court Judge